Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 50064 | **DATE** | 8/28/2001 |
| **CASE TITLE** | Meshes vs. Warren & Sweat Mfg. Co., Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motion for summary judgment;
Plaintiffs' motion to strike

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, plaintiffs' motion to strike is granted and defendant's motion for summary judgment is also granted. This case is hereby dismissed in its entirety, including Counts III and IV which were brought against Elizabeth Webbing Mills Co., Inc., and which were effectively dismissed when plaintiffs voluntarily dismissed Elizabeth Webbing from the case on February 2, 2001.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 29 2001 | |
| | Notified counsel by telephone. | | date docketed | 49 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | AUG 29 2001 | |
| | | | date mailed notice | |
| /LC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

**DOCKETED**

**AUG 2 9 2001**

Dru Meshes, et al.

v.

Warren & Sweat Manufacturing Co., Inc.

**JUDGMENT IN A CIVIL CASE**

Case Number: 98 C 50064

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.


IT IS HEREBY ORDERED AND ADJUDGED that plaintiffs' motion to strike is granted and defendant's motion for summary judgment is also granted. This case is hereby dismissed in its entirety, including Counts III and IV which were brought against Elizabeth Webbing Mills Co., Inc., and which were effectively dismissed when plaintiffs voluntarily dismissed Elizabeth Webbing from the case on February 2, 2001.

All orders in this case are now final and appealable.

FILED-WD
01 AUG 28 PM 3: 21
CLERK
U.S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Date: 8/28/2001

Susan M. Wessman, Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION


DOCKETED
AUG 29 2001

DRU MESHES and )
CHRISTINE B. MESHES )
                              )
      Plaintiffs, )
                              )
v. ) No. 98 C 50064
                              )
WARREN & SWEAT MANUFACTURING )
CO., INC., a foreign corporation, )
                              )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiffs, Dru and Christine B. Meshes, have filed a four-count amended complaint against defendant, Warren & Sweat Manufacturing Co., Inc. ("Warren & Sweat").[1] Relevant to this order are Counts I and II,[2] in which Dru alleges a claim against Warren & Sweat premised on strict products liability (Count I) and Christine (Dru's wife) brings a claim for loss of consortium and related damages (Count II). As the Meshes have alleged Warren & Sweat is a "foreign corporation"[3] with its principal

---

[1] The Meshes' amended complaint also named Elizabeth Webbing Mills Co., Inc. ("Elizabeth Webbing"), as an additional defendant, but they later voluntarily dismissed it from the case.

[2] Counts III and IV were brought solely against Elizabeth Webbing and were effectively dismissed along with the Meshes' voluntary dismissal of that defendant.

[3] Although a plaintiff normally must be more specific than this in its jurisdictional pleadings regarding the citizenship of a defendant corporation for diversity purposes, see 28 U.S.C.

place of business in Florida, the Meshes are Illinois citizens, and the amount in controversy exceeds $75,000, diversity jurisdiction is proper under 28 U.S.C. § 1332. Before the court is Warren & Sweat's motion for summary judgment as to Counts I and II, filed pursuant to Federal Rule of Civil Procedure 56.

## II. BACKGROUND

### A. Local Rule 56.1

Before reciting the facts of this case, the court takes up two procedural matters. First, the Meshes have moved to strike paragraphs 4 and 5 of Warren & Sweat's statement of material facts, filed in accordance with Local Rule 56.1(a) ("LR 56.1").[4] The court agrees that these two paragraphs contain improper argument and accordingly strikes them.

A second and, in the court's view, more serious problem has to do with Warren & Sweat's method of presenting evidence to the court. In the brief accompanying its motion for summary judgment, Warren & Sweat sets out a number of facts not identified in its LR 56.1(a) statement of facts. It then repeats this error when it introduces facts and materials in its reply

---

§ 1332(c)(1); Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co., No. 00-2576, 2001 WL 869365, at *4 (7th Cir. Aug. 2, 2001), the court understands the Meshes' allegation that Warren & Sweat is a "foreign corporation" to mean it is *not* an Illinois corporation. The court is thus satisfied the parties are indeed of diverse citizenship. In the future, a party invoking the court's diversity jurisdiction should specify the state of incorporation.

[4] The parties incorrectly refer to this rule by its former designation, Local Rule 12.

brief that are not referenced in its reply to the Meshes' LR 56.1(b) statement of additional facts. Moreover, most of these additional materials were not merely responsive to the facts raised by the Meshes, but should have been submitted with Warren & Sweat's original LR 56.1(a) statement. The court disapproves of these practices because they leave the nonmoving party without a fair opportunity to contest or rebut those facts not specifically mentioned in the LR 56.1(a) statement.[5] For this reason, the court will exclude from its consideration all facts and evidence not contained in the parties' LR 56.1 statements. As it turns out, the facts left before the court nevertheless call for summary judgment in Warren & Sweat's favor.

B. **Facts**

On October 1, 1996, Dru Meshes alleges he fell thirty feet from a tree when a safety belt he was using in connection with a "tree stand" (a device hunters such as Dru use to hunt from the elevated vantage point of a tree) broke, causing him various personal injuries. (Am. Compl. ¶¶ 5, 10) He claims the safety belt was defective and unreasonably dangerous and seeks to hold Warren & Sweat liable for selling him the belt in its defective condition. (Id. ¶¶ 7-9) The only issue in the present motion

---

[5] Besides this, some of the additional evidence Warren & Sweat relies upon in its reply brief is either not supported by the cited materials or taken out of context to the point where the court can make little sense of it. One example of this is the first full paragraph on page 9 of its reply brief.

for summary judgment is whether the safety belt Dru used on the date of his accident did in fact come from Warren & Sweat.

As of October 1, 1996, Dru testified in his deposition he owned just five safety belts: four that came with four Warren & Sweat "Trophy Lite tree stands" he purchased from a Gander Mountain store in October 1994 (Dru has also produced the matching receipts from these transactions) and a fifth he made himself. (LR 56.1(b) ¶¶ 1, 3, 5, 7) He recalled one of the Warren & Sweat belts having a plastic buckle and identified this one as the one that broke. (Id. ¶ 1; Pl. Exh. A, Dru Meshes dep., pp. 35-36)

Warren & Sweat admits it incorporated a plastic buckle into its "body strap" (i.e., safety belt) during the mid-1980s (LR 56.1(b) Def. Reply ¶¶ 17, 18), but contends the "webbing" used to make the broken belt in question could not have come from Warren & Sweat. Rather than produce its own, Warren & Sweat buys webbing from outside suppliers. Ray McIntyre, Warren & Sweat's president and owner, testified that, between 1984 or so until around 1996, two companies supplied Warren & Sweat with its webbing: Elizabeth Webbing and another called "YKK."[6] (LR 56.1(a) ¶ 4B; Def. Exh. E, McIntyre dep., p. 14) When asked if Warren & Sweat purchased webbing from anybody else, McIntyre answered, "Not that I know of right now." (LR 56.1(a) Pl. Resp.

---

[6] YKK's full name is actually YKK (U.S.A.), Inc. (LR 56.1(a) ¶ 4D)

¶ 4B; Pl. Exh. 15, McIntyre dep., p. 15)

Representatives from both Elizabeth Webbing and YKK have testified the webbing used in the broken belt was not made by either of their respective companies. (LR 56.1(a) ¶¶ 4C, 4D) This is because the broken belt's webbing contains an unusual "nylon monofilament catch cord" not found in the webbing or straps produced by Elizabeth Webbing or YKK. (Id.) When asked if he knew of any other companies using a nylon monofilament catch cord in its webbing, John Jennings, a former engineer in the research and development division of YKK, said the only such samples he had seen came from a company by the name of Wellington. (LR 56.1(b) ¶ 33)

### III. ANALYSIS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Chavez v. Illinois State Police, 251 F.3d 612, 635 (7th Cir. 2001). To determine whether a genuine issue of material fact exists, the court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. See Chavez, 251 F.3d at 635. However, only when a reasonable jury could find for the nonmoving party based on the record as a whole will there be a

"genuine issue for trial." See id. Put another way, summary judgment should be entered when, after an adequate time for discovery, the nonmoving party fails to establish the existence of a genuine issue of material fact for trial or make a showing sufficient to prove an element essential to his case on which he will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Del Raso v. United States, 244 F.3d 567, 570 (7th Cir. 2001).

As mentioned above, the narrow issue before the court is whether the Meshes have produced sufficient evidence to trace the broken belt back to Warren & Sweat so as to survive summary judgment. In Illinois,[7] the plaintiff in a products liability case bears the burden of proving by a preponderance of the evidence that the defendant caused the complained-of harm. See Smith v. Eli Lilly & Co., 560 N.E.2d 324, 328 (Ill. 1990). This "identification element of causation in fact" requires the plaintiff to establish a sufficient connection or link between the product and its alleged supplier or manufacturer. See id. at 329; Schmidt v. Archer Iron Works, Inc., 256 N.E.2d 6, 8 (Ill.), cert. denied, 398 U.S. 959 (1970); Sutton v. Washington Rubber Parts & Supply Co., 530 N.E.2d 1055, 1057 (Ill. App. Ct. 1988). In even simpler terms, "there must first be proof that the

---

[7] Both sides have assumed without discussion that Illinois law, rather than the law of some other state, governs their dispute, so the court will do the same. See Checkers Eight Ltd. P'ship v. Hawkins, 241 F.3d 558, 560 (7th Cir. 2001).

defendant produced, manufactured, sold, or was in some way
responsible for the product." Smith, 560 N.E.2d at 328 (quoting
Annotation, Products Liability: Necessity and Sufficiency of
Identification of Defendant as Manufacturer or Seller of Product
Alleged to Have Caused Injury, 51 A.L.R.3d 1344, § 2(a) (1973)).
Such proof may come in the form of direct or circumstantial
evidence, but mere speculation, guess, or conjecture is not
enough. See Smith, 560 N.E.2d at 328; Sutton, 530 N.E.2d at
1057. Instead, the circumstances of the case must justify an
inference of "probability as distinguished from mere
possibility." Zimmer v. Celotex Corp., 549 N.E.2d 881, 883 (Ill.
App. Ct. 1989); Sutton, 530 N.E.2d at 1057.

As the court views the record, this case breaks down into a
rather straightforward syllogism. The webbing in the strap used
by Dru on October 1, 1996, contained a unique nylon monofilament
catch cord. McIntyre testified Elizabeth Webbing and YKK were
Warren & Sweat's only webbing suppliers that he knew of between
1984 and 1996. Neither Elizabeth Webbing nor YKK use a nylon
monofilament catch cord in their webbing, so the strap at issue
was not produced or manufactured by either of these two companies
(a fact not disputed by the Meshes). Since the webbing did not
come from Elizabeth Webbing or YKK, and Warren & Sweat bought its
webbing from just these two companies, the only logical
conclusion is that Warren & Sweat did not sell, and is not
responsible for, the broken safety belt.

The Meshes, however, take issue with at least one of these premises. Specifically, they argue the evidence is not entirely conclusive that Elizabeth Webbing and YKK were Warren & Sweat's only webbing suppliers. When McIntyre was asked during his deposition, "Did you purchase it [webbing] from anybody else?," he replied, "Not that I know of right now." The Meshes translate McIntyre's answer as "I don't know" and claim this "equivocal" response, combined with the fact that Warren & Sweat's computer records only go back to 1991, leaves open the possibility Warren & Sweat purchased webbing elsewhere before 1991. Thus, the Meshes conclude, Warren & Sweat "has not proven conclusively" that all of its webbing was produced by Elizabeth Webbing and YKK. The court is not persuaded. Not only is this argument based on a fundamental misconception the Meshes have about the parties' respective burdens on summary judgment, but it does nothing more than raise the mere possibility that Warren & Sweat is responsible for the broken safety belt.

As noted above, Rule 56 mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The Meshes, however, have not-so-subtly tried to shift this burden to Warren & Sweat in their response brief: "The defendant has been unable to identify the manufacturer of the webbing that was used to produce

-8-

the body strap in question. The defendant is attempting to utilize its inability to identify the manufacturer as circumstantial evidence that the body strap did not come from a Warren & Sweat tree stand." (Pl. Resp., p. 6) Quite the contrary, Illinois law makes it clear it is up to the Meshes, not Warren & Sweat, to identify the manufacturer of the webbing and it is the Meshes who are improperly attempting to use *their* inability to identify the manufacturer as circumstantial evidence that the body strap *did* come from a Warren & Sweat tree stand.

Taken literally, McIntyre's testimony could allow the possibility Warren & Sweat had other webbing suppliers besides Elizabeth Webbing and YKK. But this is a long way from a probability. With the Meshes producing absolutely no additional evidence suggesting Warren & Sweat in fact used other webbing suppliers, whether it actually did is pure guesswork and conjecture. See Smith, 560 N.E.2d at 328; Sutton, 530 N.E.2d at 1057; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("metaphysical doubt" regarding the existence of a genuine fact issue is not enough to survive summary judgment).

The Meshes' remaining evidence (or lack thereof) is similarly unconvincing. They point to the testimony of Loretta Sperry, Warren & Sweat's former vice-president, who stated the broken strap appeared to be the kind of webbing Warren & Sweat received from Elizabeth Webbing. (LR 56.1(b) ¶¶ 27, 29)

However, the Meshes admit in their response to Warren & Sweat's LR 56.1(a) statement of facts (¶¶ 4C, 4D) and concede in their response brief (p. 6) that the broken belt could not have come from Elizabeth Webbing because of the nylon monofilament catch cord, so Sperry is clearly wrong on this point. The Meshes also rely on John Eschen, an acquaintance of Dru's who testified he bought a Warren & Sweat climbing tree stand from Gander Mountain in 1991 or 1992 that included a long black safety strap with a plastic buckle. (Id. ¶ 13) The buckle had the word "Fastex" imprinted on it, along with the address "Des Plaines, Illinois 60016." (Id. ¶ 14) Based on this, the Meshes claim the plastic buckle on Eschen's belt "was identical to the plastic buckle on Dru Meshes' [broken] belt . . . and both were manufactured by ITW Nexus [the company Warren & Sweat bought plastic buckles from]." (Pl. Resp., p. 8) The court is at a loss to follow the Meshes' chain of reasoning. The most obvious fallacies in this argument are that the Meshes have pointed out no evidence to show either Dru's buckle had the same markings as Eschen's or these markings have some connection to ITW Nexus. Thus, the theory that both buckles originated from ITW Nexus and passed through Warren & Sweat's hands lacks a proper foundation.

Besides the inherent flaws in the Meshes' evidence to connect Dru's broken belt with Warren & Sweat, none of it addresses what the court believes to be the real key in this case: the undisputed testimony regarding the nylon monofilament

catch cord found in the broken belt. The Meshes concede the belt Dru used on October 1, 1996, is composed of webbing with a unique nylon monofilament catch cord and further concede neither Elizabeth Webbing nor YKK produce such webbing. (LR 56.1(a) Pl. Resp. ¶¶ 4C, 4D; Pl. Resp., p. 6) Logic thus dictates the Meshes need to find other companies that manufacture, distribute, supply, or use webbing with this sort of catch cord. John Jennings, YKK's representative, apparently supplied them with one such company - Wellington. For whatever reason, the Meshes have not moved to amend their complaint to name Wellington as an additional defendant. More to the point, they have completely failed to provide evidence *Warren & Sweat* purchased webbing from Wellington or any other supplier producing this unique type of webbing. The closest they ever come in this respect is to read between the lines of McIntyre's testimony.[8] As discussed above, though, this "evidence" is much too tenuous and speculative to create a genuine issue of fact that Warren & Sweat had other webbing suppliers and, if so, that those unknown suppliers used

---

[8] To be fair, the Meshes do cite one other piece of evidence on this point in their statement of facts. They do not, however, actually rely on it in their response brief (and for good reason). Chris Carter, a former plant manager at Warren & Sweat, testified that Warren & Sweat received samples of webbing from various companies "all the time." (LR 56.1(b) ¶ 26) But as the Meshes themselves note, Carter further explained the samples were "never something that we [Warren & Sweat] could use in manufacturing" because they were "never long enough." (Id.) Thus, even supposing some of the samples Warren & Sweat received had a nylon monofilament catch cord, it is undisputed the samples could not have found their way into a finished Warren & Sweat safety belt.

-11-

webbing with a nylon monofilament catch cord.

Nor does Dru's testimony (what the Meshes call their "direct evidence") save the day for the Meshes. For purposes of Warren & Sweat's motion, the court does not doubt Dru believes the broken belt is the one with a plastic buckle that was included in one of his Warren & Sweat tree stands.[9] But no matter how much Dru believes this to be so, it does not change the fact that the broken belt contains a unique nylon monofilament catch cord not found in either Elizabeth Webbing's or YKK's webbing. In the face of the Meshes' concession on this latter point, and their failure to produce sufficient evidence Warren & Sweat had other webbing suppliers besides Elizabeth Webbing and YKK (or that any unnamed supplier's webbing had a nylon monofilament catch cord), Dru's testimony is simply not enough to create a question of fact that Warren & Sweat "probably" sold or is otherwise responsible

---

[9] This is so despite Dru's deposition testimony being internally inconsistent on this issue. Dru testified he used his homemade belt until he bought the four Warren & Sweat tree stands in October 1994. At that point, he stopped using the homemade belt and began using the belts that came with the Warren & Sweat tree stands. (LR 56.1(b) ¶ 8; Pl. Exh. A, Dru Meshes dep., pp. 62, 82-83) By the time of his accident on October 1, 1996, he was using the Warren & Sweat belt with the plastic buckle exclusively because it was easier to slide. (LR 56.1(b) ¶ 8; Pl. Exh. A, Dru Meshes dep., pp. 62, 83) After he got out of the hospital following his accident, Dru was asked what he was "going to do about" the broken strap. Initially believing he had used his homemade belt on the day of the accident, Dru replied rhetorically, "[W]hat can I do about it. I made the strap." (LR 56.1(b) ¶ 12; Pl. Exh. A, Dru Meshes dep., pp. 71, 77) But if Dru had stopped using his homemade belt once he bought the Warren & Sweat tree stands, why would he have thought he used the homemade belt on the day of the accident (some two years later)?

for the broken safety belt.[10] Cf. Schmidt, 256 N.E.2d at 7-8 (directed verdict for defendant affirmed where plaintiff failed to provide sufficient evidence that defendant furnished defective metal eye pin); Sutton, 530 N.E.2d at 648-49 (summary judgment proper where plaintiff's evidence merely raised possibility that defendant sold defective light bulb).

In sum, the court finds the Meshes have failed to make a sufficient evidentiary showing to create a genuine issue of fact regarding the identity of the broken safety belt, an element of their case that they would bear the burden of proving at trial.

## IV. CONCLUSION

For the reasons stated above, the Meshes' motion to strike is granted and Warren & Sweat's motion for summary judgment is also granted. This case is hereby dismissed in its entirety, including Counts III and IV, which were effectively dismissed earlier when the Meshes voluntarily dismissed Elizabeth Webbing as a defendant.

---

[10] The same is also true of Sperry's other testimony, where she tentatively claimed to recognize the plastic buckle and "box stitch" on the broken belt as being similar to the plastic buckles and box stitches used on Warren & Sweat belts. (LR 56.1(b) ¶¶ 31, 32) For the same reasons just discussed with respect to Dru's testimony, Sperry's testimony is similarly insufficient to create a genuine issue of fact on the identity of the broken belt.

E N T E R:

_____
PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT


DATED: _____August 28, 2001_____